IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| SALVATORE DiNAPOLI, MICHELLE NEESE, and CHRISTOPHER FLYNN, | : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : | No. 09-5924 |
| INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES LOCAL 8, et al., | : : : : : | |
| Defendants. | : : | |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**  MAY 19, 2010

Presently before the Court are Defendants The Walnut Street Theatre (the "Theatre"), Roy Backes ("Backes"), and Bernard Havard's ("Havard") (collectively, the "Theatre Defendants") Motion to Dismiss and Defendants International Alliance of Theatrical Stage Employees Local 8 (the "Union"), Michael Barnes ("Barnes"), Francis O'Shea's ("O'Shea") (collectively, the "Union Defendants") Motion for Judgment on the Pleadings. For the following reasons, Union Defendants' Motion is granted and Theatre Defendants' Motion is granted in part and denied in part.

**I. BACKGROUND**

The Plaintiffs in this matter, Salvatore DiNapoli ("DiNapoli"), Michelle Neese ("Neese"), and Christopher Flynn ("Flynn") are all former employees and members of the Union. The terms and conditions of Plaintiffs' employment, including the termination procedures and guidelines,

were set forth in a Collective Bargaining Agreement ("CBA") between the Theatre and the Union.

As part of her prior job duties at the Theatre, Neese recorded the times employees at the Theatre were at work, reviewed fellow Union members' timesheets and submitted the timesheets to the Theatre's production office. In May of 2008, Neese uncovered alleged inaccurate timekeeping and payroll procedures being conducted at the Theatre by other Union employees – including the "ghosting" of timesheets where employees or union officials indicated that they had worked for a time period when they had not.

Neese raised her concerns over these alleged inaccuracies and "ghosting" to Backes, the Theatre's Production Manager, who informed Neese that the alleged inaccuracies were approved. In addition, Neese also alerted Barnes, the Business Manager for the Union, to these problems. Finally, Neese went further up the chain of command and reported the timesheet issues to Havard, the Theatre's President and Producing Artistic Director.

According to the Complaint, Neese's co-workers and management at the Theatre and Union disapproved of Neese's decision to report the purported issues. Moreover, Union management allegedly blamed DiNapoli and Flynn for Neese's decision. The Complaint pleads that DiNapoli, Neese and Flynn were subjected to a pattern of discriminatory and retaliatory treatment by their superiors after Neese took action. Specifically, they were allegedly subjected to conduct such as unwarranted reprimands, decreased work opportunities, and verbal harassment.

Section 7.1 of the unamended CBA is quoted in the Complaint. It states:

Seasonal Employees employed as of the beginning of a season may only be

> terminated during the season for cause. During the season a written paper trail will be established by the Production Manager and shared with the Seasonal Employee as performance issues arise throughout the season. Within the two-week period following the close of the season, the Employer shall advise the Union and each Seasonal Employee as to whether employment will be renewed during the following season, and decisions by the Employer not to renew employment shall be supported by a paper trail outlining the areas of dissatisfaction.

(Compl. ¶ 40.) According to Plaintiffs, Defendants attempted to circumvent the CBA's approval process in order to create an addendum (the "Addendum") to the CBA to allow Defendants to terminate Plaintiffs' employment without the need to adhere to the terms and conditions outlined in Section 7.1 of the CBA. In addition, the Plaintiffs allege that Defendants misrepresented the time frame of the Addendum in order to terminate Plaintiffs pursuant to more relaxed rules.

Specifically, the Addendum purported to modify the CBA by replacing the language in Section 7.1 of the CBA with the following language that eliminated the need for a "paper trail":

> Seasonal Employees employed as of the beginning of the season may only be terminated during the season for cause. Within the two-week period following the close of the season, the Employer shall advise the Union and each Seasonal Employee as to whether employment will be renewed during the following seasons, and decisions by the Employer not to renew employment shall not be arbitrary or discriminatory.

(Id. ¶ 43.)

In regard to the timing of the Addendum, Plaintiffs allege that the Union's May 2009 newsletter, dated April 25, 2009, notified Union members of the Theatre's request to open the CBA. According to the Complaint, the Union claims that on May 6, 2009, at a Union general meeting, a vote was taken to allow opening of the CBA. Plaintiffs allege that Theatre management and union officials intentionally scheduled Plaintiffs to work at the Theatre during this meeting and did not give them permission to attend.

3

Notably, per the Complaint, Plaintiffs asked Union President O'Shea whether their contract would be brought up, discussed, or voted on at a special executive board meeting planned for June 24, 2009. Plaintiffs allege that O'Shea assured them that the contract would not be brought up and that he would call the meeting out of order if the issue was raised. Plaintiffs claim that they did not attend the meeting in reliance upon the statements by O'Shea that the contract would not be discussed.

Subsequently, in a letter dated August 3, 2009 from the Union's counsel to DiNapoli, counsel stated: "On July 10, 2009, the parties executed an addendum to the Collective Bargaining Agreement between IATSE Local 8 and the Walnut Street Theatre." (Id. ¶ 47.) In the Union's August 2009 newsletter, dated August 14, 2009, the Union stated that "membership voted to accept Walnut's proposed changes," including the changes to the terms and conditions outlined in Section 7.1. (Complaint at ¶ 48.) The Plaintiffs assert that the only vote taken prior to the August 2009 newsletter was the vote taken at the Union's general meeting in May to allow opening of the CBA. Moreover, according to the Complaint, this vote was not a vote for the ratification of any changes to the CBA; rather, it was merely a vote to allow negotiations to begin.

According to the Complaint, "[a]lmost immediately after the alleged ratification of the addendum to the CBA, the Theatre arbitrarily, discriminatorily, and in bad faith terminated Plaintiffs' employment with them in retaliation for the reporting of the timesheet inaccuracies via letters dated July 14, 2009 from [Backes] to each of the Plaintiffs." (Id. ¶ 60.)

Plaintiffs allege that on or about September 2, 2009, at a Union general meeting, Union members brought up the fact that the vote at the May general meeting was only to allow

4

negotiations to begin and was not a ratification of any proposed changes to the CBA. According to the Complaint, a ratification vote was taken at this meeting where Union members voted to ratify the changes.

Plaintiffs claim that the modification was in violation of Section 13.1 of both the original and amended CBA which states: "The terms and conditions set forth above in this Agreement shall take effect upon ratification of this agreement, and remain in force and binding to the thirtieth day of November 2009." (Id. at ¶ 53.) Plaintiffs plead that they were not terminated in accordance with the procedures set forth in the CBA because any changes alleged to have been made were not official until at least the time the ratification vote was taken at the September general meeting, and even then, the changes could only become effective beginning December 1, 2009. (Id. at ¶ 54.)

After their termination, Plaintiffs filed grievances in accordance with the grievance procedures set forth in both the CBA and the Union's Constitution. These grievances were allegedly ignored by the Union until the deadlines set forth in the CBA lapsed. After the grievance deadlines lapsed, Plaintiffs' grievances were denied. Subsequently, appeals of the decision to deny Plaintiffs' grievances were denied or allegedly ignored by the Union. On September 25, 2009, the Union informed Plaintiffs that it would not proceed to arbitration for Plaintiffs and would withdraw Plaintiffs' grievances. Plaintiffs then appealed the Union's decision to decline arbitration, as well as the Union's conduct towards Plaintiffs through the Union's internal grievance procedures. Plaintiffs assert that the Union failed to appropriately investigate or address their appeals.

On December 11, 2009, Plaintiffs filed their Complaint against the Theatre Defendants

and Union Defendants (collectively, "Defendants") alleging breach of the duty of fair representation against the Union (Count I), breach of the CBA against the Union and Theatre (Count II), retaliatory suspension and/or discharge against the Theatre (Count III), civil conspiracy against all Defendants (Count IV), intentional infliction of emotional distress against all Defendants (Count V), fraud against all defendants (Count VI), and fraudulent misrepresentation against all defendants (Count VII).

## II.   STANDARDS OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corporation v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).

Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual

allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir.

2002).

## B. Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." Fed. Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. Jan. 21, 2000) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)). The district court, when reviewing a motion to dismiss for lack of subject matter jurisdiction, "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." Id. (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir. 1987)). The district court is not confined to the face of the pleadings when deciding whether subject matter jurisdiction exists. Id. (citing Armstrong World Indus. v. Adams, 961 F.2d 405, 410, n.10 (3d Cir. 1992)). "In assessing a Rule 12(b)(1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings." Id. (citing Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990)). In the case where the defendant attacks jurisdiction with supporting affidavits, "the plaintiff has the burden of responding to the facts so stated." Id. "A conclusory response or a restatement of the allegations of the complaint is not sufficient." Id. (citing Int'l Ass'n of Machinists & Aerospace Workers v. N.W. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)).

## C. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the

8

pleadings after the pleadings have closed, but not within such time as to delay trial. Fed. R. Civ. P. 12(c). In order to prevail on such a motion, the movant must show "that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004). In considering a motion for judgment on the pleadings, this Court views the facts alleged in the pleadings as true and any inferences to be drawn therefrom in the light most favorable to the non-movant. Id.

## III. DISCUSSION

The Theatre Defendants move the Court to dismiss Counts II, III, IV, V, VI, and VII pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6). The Union Defendants move for Judgment on the Pleadings with respect to Counts IV, V, VI, and VII pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Court grants Defendants' Motions with the exception of the Theatre Defendants' Motion in regard to Count II.

### A. Count II (Breach of the CBA v. the Union and the Theatre)

In Count II, Plaintiffs allege that the Union and the Theatre "breached the Collective Bargaining Agreement by discharging Plaintiffs arbitrarily in violation of the CBA" and that "[e]ven if the CBA is deemed to have been properly amended as required, Defendants have still breached the amended CBA by failing to terminate Plaintiffs in the manner prescribed by the terms of the amended CBA." (Compl. ¶¶ 87, 88.) The Theatre Defendants argue that Count II should be dismissed because it fails to state a cause of action with sufficient specificity and is preempted under the United States Supreme Court case San Diego Building Trades Council v. Garmon. 359 U.S. 236 (1959).

As an initial matter, Plaintiffs have pled this Count with sufficient specificity. They have

9

identified the specific Defendants (i.e., the Union and the Theatre) alleged to have breached the CBA. Further, they have pointed to specific acts throughout the "Factual Background" section of the Complaint which Plaintiffs claim are in violation of the CBA, including the timing and manner of their termination. As a result, Count II will not be dismissed on this ground.

In regard to the Theatre Defendants' second argument, "Garmon preemption protects the exclusive jurisdiction of the [National Labor Relations Board ('NLRB')] over unfair labor practice proceedings; accordingly, if a cause of action implicates protected concerted activity under section 7 of the [National Labor Relations Act ('NLRA')] or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA, the cause of action is preempted." Violas v. Gen. Motors Corp., 170 F.3d 367, 378 (3d Cir. 1999). The Theatre Defendants argue that the claims encompassed by this Count should have been exclusively raised with the NLRB and that the Court is precluded from hearing them.

Count II is not preempted by Garmon. Garmon preemption does not apply to this "breach of collective bargaining agreement" claim because the Plaintiffs have also alleged that the Union breached its duty of fair representation in Count I of the Complaint. In Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), Congress set out an exception to the NLRB's exclusive jurisdiction, "by granting district courts jurisdiction over suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Mack Trucks, Inc. v. Int'l Union, United Automobile, Aerospace and Agric. Implement Workers of Am., UAW, 856 F.2d 579, 585 (3d Cir. 1988) (citing Vaca v. Sipes, 386 U.S. 171, 180-81 (1967)). Significantly, "the NLRB's primary jurisdiction does not

10

preempt a court's jurisdiction over § 301 actions, even if the matter is subject to § 7 or § 8 of the NLRA." Id. As the Supreme Court has stated, '[t]he strong policy favoring judicial enforcement of collective-bargaining contracts was sufficiently powerful to sustain the jurisdiction of the district courts . . . even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the [NLRB]." Hines v. Anchor Motor Freight, 424 U.S. 554, 563 (1976). Based on this body of law and the facts pled in this case, Plaintiffs argue that "Garmon preemption does not apply to Count II of Plaintiffs' Complaint because the Union breached its duty of fair representation, and Count I of Plaintiffs' Complaint sets forth this breach." (Pls.' Mem. of Law in Opp. to Mot. Dismiss at 9.)

In their Reply brief to the Motion to Dismiss, the Theatre Defendants argue that Plaintiffs have not properly pled a "hybrid" Section 301 action against them in either Count I or Count II of the Complaint. However, as stated by the Third Circuit, "[t]o fall within that section it is only necessary that the plaintiff be asserting a violation of a contract between an employer and union." Davis v. Ohio Barge Line, Inc., 697 F.2d 549, 552 (3d Cir. 1982). Significantly, although the Complaint could have been drafted clearer, the Plaintiffs have satisfied this burden based on the allegations in the Complaint and because they label Count I as a "Breach of Duty of Fair Representation" by the Union and Count II as a "Breach of Collective Bargaining Agreement" by the Union and the Theatre. Even though Plaintiffs do not specifically identify Section 301 of the LMRA in Count II, they do reference the provision in Count I of the Complaint in pleading the first part of a "hybrid" claim. Moreover, based on a reading of the Complaint as a whole, it is clear that Plaintiffs assert a "hybrid" action. Lautenberg Found. v. Madoff, No. 09-816, 2009

11

WL 2928913, at *3 (D.N.J. Sept. 9, 2009) ("Regardless of what standard the Court must apply in examining the sufficiency of a claim, the law is clear that the Court must consider the Complaint in its entirety and review the allegations as a whole and in context."). As a result, the Court finds that Count II is not preempted by Garmon because it is part of a properly pled "hybrid" § 301 action. Thus, this Count survives the Theatre Defendants' Motion to Dismiss.

B.  **Count III (Retaliatory Suspension and/or Discharge v. the Theatre)**

In Count III, Plaintiffs aver that the facts "constitute the state tort of retaliatory and/or wrongful discharge contrary to public policy" because they were "discharged in retaliation for not participating in an illegal Union activity, i.e. the 'ghosting' of employee time sheets." (Compl. ¶¶ 93-94.) In their Motion, the Theatre Defendants move to dismiss this claim on the ground that a wrongful discharge action is not available to union employees.

"Pennsylvania courts and federal courts applying Pennsylvania law have limited the wrongful discharge action exclusively to at-will employees because such employees have 'no other recourse against wrongful discharge.'" Raczkowski v. Empire Kosher Poultry, Inc., No. 1:04-CV-312, 2005 WL 1273591, at *3 (M.D. Pa. May 27, 2005). As a court in this District has recognized, "Pennsylvania does not recognize such a [wrongful discharge in retaliation] tort where, as here, the employee was covered under a collective bargaining agreement." Mulligan, No. 95-1922, 1995 WL 695097, at *1 (E.D. Pa. Nov. 16, 1995). Plaintiffs do not address, let alone rebut, this well-settled law in their Response to the Theatre Defendants' Motion. The Court finds that dismissal of this Count is appropriate.

C.  **Counts IV, VI and VII (Civil Conspiracy, Fraud and Fraudulent Misrepresentation v. All Defendants)**

Both the Theatre Defendants and the Union Defendants group these Counts together in their respective Motions and argue that these tort claims are subject to Garmon preemption. In regard to these Counts, the Court agrees and concludes that the claims must be dismissed.

Pursuant to the Garmon preemption doctrine, "[s]tate regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably prohibited or protected by the [NLRA]." Violas, 170 F.3d at 378 (quoting Belknap, Inc. v. Hale, 462 U.S. 491, 498 (1983)). As the Supreme Court stated, "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." Garmon, 359 U.S. at 244.

Both state laws of general application or laws directed specifically towards labor relations may be preempted. Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res., LLC, 390 F.3d 206, 211 (3d Cir. 2004) (citing Garmon, 359 U.S. at 245). Garmon preemption promotes uniformity in the nation's labor policy by allowing the NLRB, the agency with expertise in the labor relations area, with the power to set national labor policy and interpret the NLRA. Nw. Ohio Adm'r, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018, 1027 (6th Cir. 2001). Notably, "[t]he party arguing Garmon preemption bears the burden of showing that the conduct at issue is prohibited or protected by the [NLRA]." Id. The Supreme Court has framed exceptions to Garmon preemption of state law when the conduct issue: (1) "is only a peripheral concern of the [NLRA]"; or (2) "touches on interests so deeply rooted in local feeling and responsibility." Local 926, Int'l Union of Operating Engineers v. Jones, 460 U.S. 669, 676

13

(1983).

In this case, Plaintiffs' claims are clearly preempted pursuant to Garmon. The focus of Plaintiffs' Complaint is that they were terminated pursuant to an improper amendment to the CBA by a union and an employer that were acting in bad faith. For example, in their conspiracy claims, Plaintiffs aver that "Defendants committed an overt act of surreptitiously modifying the CBA in pursuance of the common purpose of illegally terminating Plaintiffs from their positions." (Compl. ¶ 98.) The Defendants' alleged conduct more than "arguably" falls within the ambit of the unfair labor practice protections delineated in Section 8 of the NLRA. In fact, the alleged conduct is squarely within the reach of these protections.

Specifically, as Defendants argue, the purported conduct is encompassed by the unfair practice protections outlined in Section 8 regarding the Union and Theatre's duty to bargain in good faith and their obligations to refrain from interfering with Plaintiffs' rights to participate in the collective bargaining process or other union activities. 29 U.S.C. §§ 158(a)(1), 158(a)(5), 158(b)(1), 158(b)(3); see also 158(d). The Defendants have fulfilled their burden of showing that the activity at issue is protected by the NLRA. Moreover, this case does not trigger the Garmon exceptions. There are no interests deeply rooted in local responsibility related to the relevant conduct and the conduct is far from a peripheral concern to the NLRA; on the contrary, it goes to the heart of the Act's protections.

Furthermore, this case is inapposite to the Wells v. General Motors Corporation case cited by the Plaintiffs. 881 F.2d 166. In Wells, employees claimed that the employer offered false inducements in an attempt to persuade the employees to accept a voluntary termination plan

14

which was the product of prior collective bargaining. Id. at 170-72 (5th Cir. 1989). The employer in that case was alleged to have misrepresented the employees' opportunity for rehire if they accepted the plan. Id. The court found that the claim could not be interpreted as one for bargaining in bad faith because the eligibility for future employment was not a mandatory bargaining subject. Id. Thus, the alleged conduct did not fall within the unfair labor practice protections of the NLRA and Garmon preemption did not apply. Id.

Here, Plaintiffs claim that Defendants conspired to commit fraud against them through a collective bargaining process that amended the CBA and that they also misrepresented material facts related to that same bargaining process. The alleged conspiracy and fraud were directly related to an active collective bargaining process to amend the CBA in regard to "mandatory subjects of bargaining" – namely, Plaintiffs' "terms and conditions of employment" under the CBA. Violas, 170 F.3d at 379; see also 29 U.S.C. §§ 158(a)(5), (d). Thus, in this case, the duties of good faith under Section 8 were undoubtedly triggered and Garmon preemption is applicable. As a result, Counts IV, VI and VII must be dismissed.

### D. Count V (Intentional Infliction of Emotional Distress v. All Defendants)

In Count V of their Complaint, Plaintiffs allege that "[t]he course of conduct perpetrated against the Plaintiffs, as described [in the Complaint] was specifically intended and had the effect of causing emotional distress to the Plaintiffs" and that "[s]aid conduct by the Defendants was known, intentional, malicious and rises to the level of outrageous conduct." (Compl. ¶ 101.) Both the Theatre and Union Defendants argue that this claim should be dismissed. The Court agrees.

15

As a threshold matter, the Pennsylvania Workers Compensation Act (the "WCA") "provides the sole remedy for injuries incurred during the course of employment . . . [therefore] claims for intentional infliction of emotional distress are generally barred under Pennsylvania law." Roberts v. Planned Bldg. Servs., No. 08-0968, 2009 WL 367542, at *5 (E.D. Pa. Feb. 13, 2009); see also Mulligan, 1995 WL 695097, at *2 ("Even if his were that rare situation where he otherwise had a viable claim, such a claim is barred by the [WCA] . . . .") Significantly, contrary to Plaintiffs' argument, this is not a situation where the "personal animus exception" to WCA preemption applies. Pursuant to the exception, intentional infliction of emotional distress claims are permissible if the "employee injuries [are] caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment." Jackson v. Lehigh Valley Physicians Group, No. 08-3043, 2009 WL 229756, at *6 (E.D. Pa. Jan. 30, 2009) (quotation marks omitted). Importantly, "[w]here the animosity between the third party and the injured employee is developed *because of work-related disputes*, the animosity is developed *because of the employment*, and the injured employee's remedy is exclusively under the [WCA]." Abbott v. Anchor Glass Container Corp., 758 A.2d 1219, 1224 (Pa. Super. Ct. 2000) (emphasis added). Here, pursuant to the Complaint, any alleged animosity was clearly triggered because of a dispute regarding the reporting of time – a clear work-related issue. Thus, the exception is not relevant in this case and the claim is barred under the WCA.

In addition, the Complaint fails to state an intentional infliction of emotional distress claim for which relief can be granted. "To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and

16

outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). In this case, Plaintiffs have not pled sufficient facts to support the "extreme and outrageous" element of the tort. Specifically, the facts do not support that Defendants' alleged conduct either during Plaintiffs' employment or subsequent to their termination was "so outrageous in character or extreme in degree as to exceed all bounds of decency." Green v. Bryant, 887 F. Supp. 798, 802 (E.D. Pa. 1995). As a result, this claim against all Defendants must be dismissed.

### E. Tort Claims Against Individual Union Officers O'Shea and Barnes

The Union Defendants also argue that Section 301(b) of the LMRA bars Plaintiffs' tort claims – Counts IV, V, VI and VII – against the individual Union Officers O'Shea and Barnes pursuant to the Supreme Court's decision in Atkinson v. Sinclair. 370 U.S. 238 (1962). Specifically, in Atkinson, the Supreme Court made it clear that "individual union officers are not personally liable to third parties for actions taken on behalf of the union in the collective bargaining process." Carino v. Stefan, 376 F.3d 156, 160 (3d Cir. 2004) (citing Atkinson, 370 U.S. at 249). As the Third Circuit noted, "'with monotonous regularity, [other courts of appeal have] cited Atkinson to foreclose state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process.'" Id. (quoting Montplaisir v. Leighton, 875 F.2d 1, 4 (1st Cir. 1989)).

In the instant case, contrary to Plaintiffs' arguments, the allegations of the Complaint arise directly from or involve the collective bargaining process. The crux of Plaintiffs' Complaint is that the Union Defendants, including O'Shea and Barnes, discriminated against

17

them in amending and administering the CBA. Plaintiffs' claims for tortious conduct are unquestionably aimed at O'Shea and Barnes's conduct (see Compl. ¶¶ 56-57), as union representatives, in relation to the collective bargaining process for the Addendum to the CBA. Thus, Plaintiffs' tort claims against O'Shea and Barnes must be dismissed pursuant to <u>Atkinson</u> and its progeny.

For the reasons set forth above, the Court finds that Counts III, IV, V, VI, and VII must be dismissed with prejudice.

An appropriate Order follows.